UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY A. CHRISTIE, et al.,

      Plaintiffs,

v.                                      CASE NO.: 8:13-cv-1371-T-23TBM

BANK OF AMERICA, N.A., et al.,

      Defendants.

_____/

## <u>ORDER</u>

In 2006, the Christies purchased for $420,000 real property in Pasco County and "entered into a mortgage . . . totaling $520,780 secured by Bank of America." (Doc. 28 at 11)  In June, 2008, Cherrie Christie "suffered a physical illness which caused her to become permanently disabled and unable to continue her employment."  (Doc. 28 at 15)  The Christies "notified Bank of America of the disability and repeatedly requested . . . a modification of the terms of the mortgage."  However, Bank of America "refus[ed] to modify the terms of the Mortgage Contract, [and] the CHRISTIES were no longer able to issue their regular monthly payments on their Mortgage Contract."  The Christies "ceased making payments" and "vacate[d] the property for which they no longer were able to pay."  The Christies notified Bank of America that they relocated and notified Bank of America of the

Christies' new address.  Bank of America acquired $482,500 in insurance for "'direct and accidental physical damage to, or loss of, insured property.'"

After the Christies vacated the home and after Bank of America acquired the insurance on the home, thieves removed from the home nearly every detachable item of value, including air-conditioning units, doors, windows, toilets, sinks, fixtures, electrical wiring, plumbing, and fencing.  Owing to these theft losses, Bank of America recovered money from the insurance on the home.

Alleging nine counts, the Christies sue (Doc. 28) the defendants for "unfair methods of competition and unconscionable, deceptive, and unfair trade practices." (Doc. 28 at 2)  Bank of America, Balboa, and QBE move (Docs. 35 and 37) to dismiss the complaint.

## DISCUSSION

*1. Standing*

Citing an assignment clause in the mortgage, Bank of America argues that the Christies lack standing.  The assignment clause states, "If Borrower abandons the Property, . . . Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights . . . under all insurance policies covering the Property." (Doc. 28-2 at 7)  Bank of America argues that under Florida law "an individual who assigns his rights to insurance proceeds

lacks standing to sue for nonpayment of those proceeds."[1]  (Doc. 37 at 8)  To show

that the Christies abandoned the home, Bank of America cites the complaint, which

states that the Christies "ceased making payments," "vacate[d] the property for

which they no longer were able to pay," "notified Bank of America that they

relocated," and "provided [Bank of America with] their new address."  (Doc. 28

at 15)  Also, in a letter to Bank of America, which is attached to the complaint, the

Christies state, "We [] gave up on the property and the thought of ever getting our

home back . . . ."  (Doc. 28-3 at 1)

     The Christies agree that if the assignment clause is "triggered," the Christies

have no standing.[2]  However, the Christies argue that they never abandoned the

--------

[1] Wright & Miller, *Federal Practice and Procedure* Vol. 13B, § 3531.14 (3d ed. 2013) ("Federal courts have stated that state law of standing should be applied as to state rights . . . , whether the state question arises in diversity jurisdiction or as a matter of supplemental jurisdiction." (footnote omitted)).

[2] Citing *Livingston v. State Farm Mut. Ins. Co.*, Bank of America explains that under Florida law, a plaintiff who has assigned a claim lacks standing to sue under that claim. 774 So. 2d 716 (Fla. 2d DCA 2000) (holding that if an insured has assigned his right to receive PIP benefits to a health care provider, the insured lacks standing to file a lawsuit to collect the assigned benefits). The Christies fail to object to Bank of America's interpretation of Florida's standing precedent, but even if Bank of America's interpretation is incorrect, Bank of America's argument is easily construed as arguing that the Christies are not the real parties in interest. *Liberty Nat. Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 554 (11th Cir. 1984) ("[T]he briefs . . . frame the issue of whether [the Christies] may bring this claim as one of standing. This is an incorrect though understandable way to characterize the question before the court."); *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir. 1975) ("[S]tanding [generally] pertains to suits brought by individuals or groups challenging governmental action which has allegedly prejudiced their interests. On the other hand, the real party in interest question is raised in those much rarer instances between private parties where a plaintiff's interest is not easily discernible."); Wright & Miller, *Federal Practice and Procedure* Vol. 6A, § 1542 (3d ed. 2013).("[Standing] closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to be entitled to be heard on the merits. . . . Thus, it is not surprising that courts and attorneys frequently (continued...)

- 3 -

home.  Citing *Bobo v. Vanguard Bank & Trust Co.*, 512 So. 2d 246 (Fla. 1st DCA 1987),

the Christies argue that their "on-going interactions with BOA [when the Christies

vacated the home] preclude a finding of abandonment."  (Doc. 87 at 7)  *Bobo* is

inapposite because in *Bobo* "[n]o evidence appear[ed] in th[e] record to support a

conclusion that Bobo intended to abandon the subleased premises or that he made

any overt act from which such an intent to abandon could be presumed."  In this

action, as Bank of America has identified, the complaint and attachments evidence

abandonment.[3]  *C.f. In re Maritas*, 2008 WL 7801998 (S.D. Fla. Nov. 24, 2008)

(Gold, J.) ("Under Florida law, 'abandonment' of homestead occurs when

homeowner removes from the home with no intention of returning, takes up

permanent abode at another place, and pursues livelihood there."); *Webb v. Blancett*,

473 So. 2d 1376, 1378 (Fla. 5th DCA 1985) ("Settled purpose, or intent, is not

necessarily demonstrated by words, but is often demonstrated by conduct."); *In re*

*Gherman*, 101 B.R. 369, 371 (Bankr. S.D. Fla. 1989) (finding sufficient

"circumstantial evidence of an intent to abandon [a] home").

---

[2] (...continued)
have confused the requirements for standing with those used in connection with real-party-in-interest
or capacity principles."); *Moore's Federal Practice*, Vol. 4, § 17.11[1][a] (3d ed. 2013) ("An assignment
transfers ownership of a right or interest from one party to another. Under a valid assignment, the
assignee of a claim becomes the real party in interest for that claim. . . . Because it has assigned the
entire claim, the assignor retains no interest on which to base an action." (footnotes omitted)).

[3] Also, *Bobo* is distinguishable because the Christies' "on-going negotiation" with Bank of
America ended when, after "repeated[] request[s]," Bank of America "refus[ed] to modify the terms
of the Mortgage Contract" and the Christies vacated the home. (Doc. 28 at 15) Thus, unlike in *Bobo*,
the Christies' "on-going negotiation" ended when the Christies vacated the home.

Also, the Christies argue – without citation to fact – that they never "triggered" the assignment clause because they vacated the home under the coercive pressure of Bank of America.  If the self-imposed stress or anxiety attributable to financial default and foreclosure precludes "abandonment," the assignment clause becomes surplusage because until the mortgage is satisfied, the mortgagor is always under pressure to pay.  Accordingly, Bank of America's action as a mortgagee fails to constitute coercion of the quantity or quality necessary to negate an actual "abandonment."  But even accepting the Christies' understanding of "abandonment," the Christies' argument fails because they cite no action of Bank of America that coerced the Christies into leaving.  To the contrary, the Christies state that the Christies' "ethic[s] and moral[ity]" and the Christies' nature as "honest people" compelled them to vacate the home.  (Doc. 28 at 15; Doc. 28-3 at 1)

The Christies argue that if the assignment provision "has been triggered," the provision is "unenforceable as a matter of public policy."  (Doc. 87 at 5)  Even if the Christies' argument is valid, the argument is unsound.  The Christies misunderstand the breadth of the assignment clause.  Like Bank of America, the Christies assume that the assignment clause, if applicable and valid, preempts each of the Christies' potential claims.[4]  However, the assignment provision assigns to Bank of America the

---

[4] For example, the Christies describe the assignment provision as a "master key" that allows Bank of America to "do what it wishes (or nothing at all) with the Proceeds." (Doc. 87 at 5) Similarly, Bank of America states, "[p]laintiffs lack standing to sue regarding the application of insurance proceeds" and "[t]he alleged failure to properly apply insurance proceeds is at the core of all of Plaintiffs' claims against Bank of America (Counts 1-9)." (Doc. 37 at 7, 9)

Christies' "rights to any insurance proceeds . . . and [] any other of [the Christies']

rights . . . under all insurance policies covering the Property." (Doc. 28-2 at 7)  Thus,

the Christies cannot assert a claim for the insurance proceeds or other rights under

the policy but may sue to enforce only the rights not assigned.  Nonetheless, each

count in the complaint asserts a right to insurance proceeds or other rights under the

insurance policy.[5]  Accordingly, the Christies may sue under certain mortgage

_____

[5] Bank of America argues that "[t]he alleged failure to properly apply insurance proceeds is at the core of all of Christies' claims against Bank of America" (Doc. 37 at 7). The Christies have failed to argue otherwise, and Bank of America's argument is verified by the complaint.

Claim I states, "As a result, the CHRISTIES . . . have and continue to be damaged in that . . . neither BAC HOME LOAN SERVICING, LP, BANK OF AMERICA CORPORATION nor BANK OF AMERICA, N.A. released insurance claims proceeds . . . to the CHRISTIES . . . ." (Doc. 28 at 37-38)

Claim II states, "BANK OF AMERICA materially breached the terms and conditions of the Mortgage Contract when it . . . [f]ailed to release Balboa Policy proceeds upon determining that repairs or restoration would not be made . . . ." (Doc. 28 at 40-41)

Claim III states, "BANK OF AMERICA breached the fiduciary duties owed to the CHRISTIES . . . by . . . [f]ailing to distribute insurance proceeds to the CHRISTIES . . . ." (Doc. 28 at 45-46)

Claim IV states, "BANK OF AMERICA . . . , without the CHRISTIES'. . . prior knowledge and/or consent and for its own benefit . . . [e]mbezzled all insurance proceeds issued by the force-placed insurance policies insuring the CHRISTIES' . . . propert[y]." (Doc. 28 at 49)

Count V states, "At all times material, DEFENDANTS intended to deprive the CHRISTIES . . . from possession of the force-placed insurance . . . proceeds." (Doc. 28 at 51)

Count VI states, "BALBOA issued [insurance] payments . . . directly to BANK OF AMERICA without including CHRISTIES . . . as additional loss payees on payments issued . . . ." (Doc. 28 at 53)

Count VII states, "Due to DEFENDANTS' failure to recognize the CHRISTIES' . . . third-party beneficiary and insurable interest status, failure to tender any claims proceeds in favor of the CHRISTIES . . . and their failure to include the CHRISTIES . . . on any claims proceeds drafts or checks, DEFENDANTS breached their contracts with the CHRISTIES . . . ." (Doc. 28 at 55)

(continued...)

provisions but not under the insurance policy or under a provision of the mortgage requiring Bank of America to disburse the insurance proceeds to the Christies.

*2. Shotgun Pleading and Count IV, Unjust Enrichment*

The Christies' sixty-page complaint "is a perfect example of shotgun pleading. It incorporates every allegation by reference into each subsequent claim for relief." *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1334 (S.D. Fla. 2012) (Seitz, J.); *accord Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (explaining that a shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions."). For example, Count IX incorporates the preceding 241 paragraphs, which span 57 pages. "[M]any of the facts alleged could not possibly be material to [each] of the counts. Consequently, [the defendants] and the district court [must] sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed." *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). Thus, the complaint is an impermissible shotgun pleading and violates Rule 8(a)(2),

---

[5] (...continued)
Count VIII states, "[T]he CHRISTIES have been and continue to be damaged in that they . . . [a]re unable to make repairs on to their residences because DEFENDANTS have not paid the CHRISTIES the Balboa Policy claim funds." (Doc. 28 at 56-57)

Count IX states, "The clear terms and conditions of the insurance policy issued by BALBOA obligate actual cost value payments to be made to the CHRISTIES . . . ." (Doc. 28 at 58)

Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim[s]." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) (describing shotgun pleadings as "altogether unacceptable"); *Osgood v. Disc. Auto Parts, LLC*, 2013 WL 6085223 (M.D. Fla. Nov. 19, 2013) (Howard, J.) ("When faced with the extreme burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative, and force the plaintiff to replead . . . .").

The shotgun complaint not only is difficult for others to decipher but also has confused the Christies, a confusion that Count IV, an unjust enrichment count, demonstrates. Bank of America argues correctly that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment when an express contract exists that concerns the same subject matter." (Doc. 37 at 18) The Christies argue that the "claim for unjust enrichment cannot be dismissed because it is an alterative claim . . . ." (Doc. 87 at 13) Generally, a plaintiff "may . . . maintain an equitable unjust enrichment claim in the alternative to her legal claims . . . ."[6] *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (Marra, J.). However, the complaint fails to allege Count IV in the alternative. Count IV incorporates the preceding 197 paragraphs, including Counts I-III, "as if fully set

_____

[6] The circumstances in which a plaintiff may allege an unjust enrichment claim in the alternative are somewhat unclear. *Compare Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (King, J.) ("[I]t would be premature to dismiss the unjust enrichment count simply because an express contract exists."), *with Martorella*, 931 F. Supp. 2d at 1227 ("Florida courts have held that 'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'").

forth [t]herein." (Doc. 28 at 49)  Among other paragraphs, Count IV incorporates (from Count II, which is a breach of contract claim) paragraph 166, which states, "The CHRISTIES . . . entered into form Note and Mortgage contracts . . . ." (Doc. 28 at 39)  The Christies' incorporation of Counts I-III, and especially Count II, demonstrates that Count IV is not pleaded in the alternative.  *JI-EE Indus. Co., Ltd. v. Paragon Metals, Inc.*, 2010 WL 1141103 (S.D. Fla. Mar. 23, 2010) (Marra, J.) ("Clearly, . . . a complaint cannot allege an express agreement in a claim for unjust enrichment or promissory estoppel."); *see also Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1332 (S.D. Fla. 2010) (Cohn, J.) ("Indeed, nothing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment *in separate counts*." (emphasis added)); *cf. Poe v. Levy's Estate*, 411 So. 2d 253, 256 (Fla. 4th DCA 1982) ("[A]llegations of an express agreement preclude, in the same count, a claim for quantum meruit.").  Because Count IV alleges an express agreement and incorporates a breach of contract claim, the Christies have failed to allege Count IV in the alternative.

## CONCLUSION

Bank of America's motion (Doc. 37) to dismiss is **GRANTED**.  Balboa and QBE's motion (Doc. 35) to dismiss is **DENIED AS MOOT**.  Because each claim asserts that the Christies are entitled to the insurance proceeds and because the complaint is a shotgun pleading, the complaint is **DISMISSED**.  No later than

**MARCH 21, 2014**, the Christies may amend the complaint.  If the Christies amend the complaint, the Christies must comply with Rule 8, Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim[s]."  The complaint, which disputes against a lender and an insurer claims resulting from a simple mortgage default on a single-family residence, should not require sixty pages – or even half of sixty pages.

ORDERED in Tampa, Florida, on February 28, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE