UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY A. CHRISTIE, et al.,

    Plaintiffs,

v.                                                              CASE NO.: 8:13-cv-1371-T-23TBM

BANK OF AMERICA, N.A., et al.,

    Defendants.
_____/

## **ORDER**

A February 28, 2014, order (Doc. 109) dismisses the first amended complaint (Doc. 28) without prejudice (1) because the plaintiffs perforce an assignment may not sue "under the insurance policy or under a provision of the mortgage requiring Bank of America to disburse the insurance proceeds to [the plaintiffs]" and (2) because the complaint is a shotgun pleading. In the April 7, 2014, motion (Doc. 119) to dismiss the second amended complaint (Doc. 118), the defendants argue that the complaint is "based on the same allegations, same claims, and same mortgage provisions" dismissed in the first order and that the complaint remains a shotgun pleading. Alternatively, the defendants maintain that the plaintiffs fail to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure.

### 1. Claim for the insurance proceeds

The first order prohibits the plaintiffs' asserting the right to insurance proceeds, a right that the mortgage assigns to the defendants. In the first amended complaint, the plaintiffs request that the defendants "release[]" or "distribute" insurance proceeds to the plaintiffs. (Doc. 28 at 37-38, 40-41, 45-46) In contrast, the plaintiffs request in the second amended complaint that the defendants "[a]pply" the insurance proceeds either to the plaintiffs' "underlying mortgage debt" or to "the restoration and repair" of the plaintiffs' properties. (Doc. 118 at 24, 26, 28) Although the mortgage assigns to the defendants the right to claim the insurance proceeds, the plaintiffs retain the right to credit the insurance proceeds against the mortgage or to invest the insurance proceeds in the underlying property. Therefore, to the assertion of the right to apply the insurance proceeds to either the plaintiffs' underlying mortgage debt or the restoration and repair of the plaintiffs' property, the first order is no bar.

### 2. Shotgun pleading

The first order dismisses the first amended complaint because the complaint is a shotgun pleading. (Doc. 109 at 7-9) Rule 8(a)(2), Federal Rules of Civil Procedure, requires "a short and plain statement of the claim." The plaintiffs change the first amended complaint (1) by reducing the length of the complaint from sixty to thirty-four pages and (2) by "incorporat[ing] only factual statements from the body of the complaint, not prior counts." (Doc. 124 at 20)

Although no explicit and exclusive definition appears in the precedent, a shotgun pleading typically offers an undifferentiated cluster of claims for relief and allegations of fact that, rather like the pellets from a shotgun blast, are neither readily and reliably decipherable nor readily and reliably distinguishable. The Eleventh Circuit frequently condemns a shotgun pleading. As explained in *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991), "many of the facts alleged could not possibly be material to [each] of the counts. Consequently, [the defendants] and the district court [must] sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed."

Although four of the counts still incorporate entirely the facts alleged, the plaintiffs reduced the complaint by almost half and limited the incorporation of preceding counts into subsequent counts. Although the complaint still arguably constitutes a (mildly) shotgun pleading, the complaint satisfactorily permits a reasonably expeditious and fairly informed response.

### 3. Rule 12(b)(6)

#### a. Breach of contract and breach of the implied duty of good faith and fair dealing

Under Florida law, a breach of contract claim requires "(1) a valid contract, (2) a material breach, and (3) damages." *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999). In addition, "every contract contains an implied covenant

of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). A claim for a breach of the implied covenant requires "an allegation that an express term of the contract has been breached." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).

The defendants argue that, because the plaintiffs allege no breach of an express term of the mortgage, the plaintiffs fail to plead either a claim for breach of contract (Count I) or a claim for breach of the implied duty of good faith and fair dealing (Count II). The plaintiffs correctly respond that the second amended complaint identifies both the specific contract provisions at issue and the defendants' alleged breaches. (*See* Doc. 118 at ¶¶ 35, 37, 39-43, 99-100) These allegations raise the right to relief above a speculative level.

Also, the defendants maintain that they complied with the terms of the mortgage. For instance, the defendants contend that the Christies' not undertaking repairs negated any obligation to disburse the insurance proceeds and that the mortgage requires no accounting of insurance proceeds. The Christies vigorously dispute these points. (Doc. 124 at 4-6) As the parties' arguments demonstrate, resolution of these issues requires construction of the mortgage, which is more reliably accomplished with a more mature record. *See Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1195 (M.D. Fla. 2008) (Fawsett, J.) ("What will

constitute a breach of contract is a matter of law to be determined by the court. Whether or not that has occurred which would constitute a breach of contract is a matter of fact to be determined by a jury" (internal quotation marks omitted)).

Finally, as to Count II, the defendants urge that the implied duty of good faith and fair dealing cannot alter an express contract. *See Ins. Concepts & Design, Inc.*, 785 So. 2d at 1234 ("[T]he implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties."). In particular, the defendants assert that the mortgage unambiguously grants Bank of America both a right to insurance proceeds and a right to hold the proceeds until immediately before a foreclosure. (Doc. 119 at 13-14)

Again, the defendants' argument will require construction of the mortgage, a construction that is premature at this stage. The plaintiffs have identified the contract terms at issue, and they plausibly allege that the defendants failed to perform in a commercially-reasonable manner. (Doc. 118 at ¶¶ 39-43, 105-07) *See Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1226 (S.D. Fla. 2013) (Marra, J.) (holding that whether the defendants acted in good faith in force-placing insurance policies was a question of fact).

### b. Unjust enrichment

In Florida, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).

However, as the first order (Doc. 109) holds, a plaintiff may plead an unjust enrichment claim as an alternative to her legal claims. *See* Fed. R. Civ. P. 8(d)(2) (permitting alternate pleading). Although the first amended complaint fails to successfully plead in the alternative a claim for unjust enrichment, the second amended complaint cures that defect. (*See* Doc. 118 at ¶ 128)

The defendants argue that a complaint may include an alternative claim for unjust enrichment only if the complaint alleges that the underlying contract is invalid. *See Martorella*, 931 F. Supp. 2d at 1227 (citing cases for this proposition). The defendants argue that the plaintiffs concede the validity of the contract by alleging that the plaintiffs "enter[ed] into the Mortgages." (Doc. 118 at ¶ 130) However, because the defendants persist in challenging the plaintiffs' entitlement to recovery under the contract, it remains "premature to dismiss the unjust enrichment count simply because an express contract exists." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (King, J.); *accord Martorella*, 931 F. Supp. 2d at 1227-28.

### c. Breach of fiduciary duty

A claim for breach of fiduciary duty requires "(1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach." *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. 1st DCA 2014). The defendants argue for dismissal of the plaintiffs' claim because a debtor-creditor relationship typically creates no fiduciary duty and because the plaintiffs fail to allege facts showing any

special circumstance that creates a duty. The plaintiffs concede the general rule[1] but maintain that the second amended complaint adequately alleges a special circumstance that creates a fiduciary duty.

Among other circumstances, a fiduciary duty may arise when a "lender takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. 3d DCA 2003). The second amended complaint alleges that the defendants "received a greater economic benefit than they would through a typical lender/borrower transaction by relieving [Bank of America, N.A.,] of financial losses resulting from damage to the properties and additional interest and other income." (Doc. 118 at ¶ 117) Further, the complaint alleges that the defendants undertook additional services, including obtaining an insurance policy; filing, negotiating, and settling claims; and assessing the economic feasibility of restoration and repair. (Doc. 118 at ¶¶ 113, 116) The plaintiffs adequately allege the existence of a special circumstance, arguably creating a fiduciary duty. *See Persaud v. Bank of Am., N.A.*, 2014 WL 4260853, at *12 (S.D. Fla. Aug. 28, 2014) (Altonaga, J.); *Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, at *18-19 (S.D. Fla. Aug. 27, 2014) (Goodman, Mag. J.).

---

[1] *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001) ("The relationship between bank and borrower is generally that of creditor and debtor, to which the bank owes no fiduciary duty.").

In the alternative, the defendants argue that the plaintiffs fail to allege facts establishing a breach of fiduciary duty because the mortgage expressly authorizes the challenged conduct. For the reasons discussed above, that argument is premature.

### d. Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

The defendants argue that the plaintiffs' FDUTPA claim fails because FDUTPA is inapplicable to "[a]ny person or activity regulated under laws administered by . . . [b]anks or savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212(4)(c). The defendants maintain that Bank of America, N.A., is a national bank regulated by the Office of the Comptroller of the Currency (OCC) and that OCC also regulated BAC Home Loans Servicing, Inc., an operating subsidiary of Bank of America, N.A., until the merger with Bank of America, N.A., in 2011. (Doc. 119 at 16-17, Exs. A and B)

The second amended complaint includes no allegation that Bank of America, N.A., is a federally-regulated bank. *Bowen v. Wells Fargo Bank, N.A.*, 2011 WL 3627320, at *6 (M.D. Fla. Aug. 17, 2011) (Steele, J.) (holding the allegations in the complaint insufficient to determine whether Wells Fargo, N.A., was an FDIC-insured bank). At least one Florida court has observed that a loan servicer, such as BAC Home Loans Servicing, Inc., is susceptible to suit under FDUTPA because "[n]othing in FDUTPA suggests that bank subsidiaries, affiliates or agents are necessarily exempt from FDUTPA." *Bankers Trust Co. v. Basciano*, 960 So. 2d 773, 778-79 (Fla. 5th DCA 2007). Further, the challenged activity in this action,

which includes the defendants' administration of an insurance policy, might not constitute a regulated "activity" under laws administered by banks. *See State, Office of Att'y Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) (noting the absence of an "allegation within the four corners of the pleading pending before the trial court, that the specific activities here were regulated by any other state or federal agency so as to avoid proscription as a deceptive or unfair trade practice").[2] These questions are better addressed on a more fully developed record.[3]

In the alternative, the defendants argue for dismissal of the FDUTPA claim because the claim is premised on conduct that is contractually authorized. The plaintiffs accurately respond that FDUTPA may govern a contractually-authorized act if the contract applies in an unconscionable, deceptive, or unfair manner. *E.g.*,

---

[2] *Accord State v. Beach Blvd Auto., Inc.*, 139 So. 3d 380, 387-88 (Fla. 1st DCA 2014) ("Florida courts resolve questions about the applicability of section 501.212(4) by looking to the activity that is the subject of the lawsuit and determining whether the activity is subject to the regulatory authority of the [governing agency]") (citing *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. 714, 723 (11th Cir. 2011), *rev'd in part on other grounds by State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed. Appx. 665, 666 (11th Cir. 2014). Although the defendants represent that "[t]he conduct about which Plaintiffs complain in this lawsuit – the application of insurance payments pursuant to the Mortgage – is the type of banking activity overseen by federal regulators," they provide no authority for that assertion. (Doc. 119 at 17)

[3] *See, e.g.*, *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1238 (S.D. Fla. 2010) (Moreno, J.) (observing the prematurity of determining, at the motion to dismiss stage, whether a defendant acted as a bank or a broker); *Diaz v. U.S. Bank, N.A.*, 2014 WL 4639431, at *5 (S.D. Fla. Sept. 15, 2014) (Bloom, J.) (holding that a factual determination of the capacity in which Bank of America, N.A., acted would be hasty, if the bank allegedly acted in connection with loan servicing); *Renfrow v. First Mortg. Am., Inc.*, 2011 WL 2416247, at *3 (S.D. Fla. Jun. 13, 2011) (Marra, J.) (declining to factually determine on a motion to dismiss whether the defendant was a national bank).

*Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1264 (M.D. Fla. 2013) (Chappell, J.); *Martorella*, 931 F. Supp. 2d at 1223. Accordingly, although the defendants are contractually-authorized to obtain and administer insurance policies, the defendants' failure to credit insurance proceeds to the plaintiffs' account, among other actions, plausibly constitutes an "unfair" act or practice.[4] (Doc. 118 at ¶ 140)

### e. Real Estate Settlement Procedures Act (RESPA)

In the final count of the second amended complaint, the plaintiffs allege that the defendants "did not timely or adequately respond" to their qualified written requests, as required by RESPA, 12 U.S.C. § 2605(e)(2). (Doc. 118 at ¶ 146) In the motion to dismiss, the defendants maintain that the plaintiffs neither identify the alleged communications nor plead that the communications were "qualified written requests," as defined under Section 2605(e)(1)(B) of RESPA:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
>
> (i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

---

[4] The historical definition of an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001). Although neither adopted nor rejected elsewhere in Florida, *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096-98 (Fla. 3d DCA 2014), propounds a three-part definition from a 1980 FTC policy statement that supplants the historical definition, derived from a 1964 FTC policy statement.

In particular, the defendants argue that the plaintiffs fail to plead the day or specific content of their qualified written requests.

The second amended complaint alleges that the plaintiffs "prepared written correspondence inquiring as to whether claims proceeds had been credited in favor of their mortgage balance or, alternatively, if repairs had been made to the Property. True and correct copies of the letters are attached hereto as Exhibits 'H' and 'I.'" (Doc. 118 at ¶ 72, Exs. H and I). In the attached letters, the Christies identify their names, their account number, and their requests about the loan.

These allegations are sufficient under Rule 12(b)(6) to plead that the plaintiffs submitted a qualified written request. Whether these letters constitute a qualified written request under RESPA (Doc. 119 at 16 n.13), is better resolved on a more mature record.

### f. Bank of America Corporation

Finally, the defendants argue that the plaintiffs fail to state a claim against Bank of America Corporation, a bank holding company, because the plaintiffs allege no specific misconduct by Bank of America Corporation. The defendants argue that the plaintiffs only conclusorily allege that Bank of America Corporation acted as an "alter ego" and controlled the affairs of the other defendants.

In Florida, the disregard of a subsidiary's corporateness requires "(1) an alter ego theory to 'pierce the corporate veil'; (2) vicarious liability based on general agency principles; or (3) direct liability where the parent directly participated in the

- 11 -

wrong complained of." *Gillespie v. HSBC N. Am. Holdings, Inc.*, 2006 WL 2735135, at *5 n.5 (M.D. Fla. Sept. 25, 2006) (Hodges, J.) (citing *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) (Moreno, J.)). Under the first theory, a plaintiff "must prove: (1) that the subsidiary was a 'mere instrumentality' of the parent and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998). "Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose . . . or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." (internal quotations marks omitted).

In each count of the second amended complaint, the plaintiffs allege that Bank of America Corporation "at all times material hereto was aware of and approved of [the defendants'] actions and benefited therefrom." (*E.g.*, Doc. 118 at ¶ 101) The complaint also alleges (1) that Bank of America Corporation, as an alter ego of the defendants, conducted, managed, and controlled their affairs, such that the defendants retained no genuine and separate corporate existence; (2) that Bank of America Corporation used the defendants "to transact a portion of its business, wrongfully at times, under an alternate corporate guise" and "to shield itself from prospective liability"; and (3) that Bank of America Corporation was "directly and indirectly involved in the activities set forth herein" and "explicitly or implicitly approved of the wrongful actions set forth herein." (Doc. 118 at ¶¶ 11, 22-25)

As the defendants argue, these allegations are wholly conclusory and insufficient to support disregarding the corporateness of Bank of America Corporation's subsidiary. *See, e.g.*, *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373-74 (S.D. Fla. 2011) (King, J.). Accordingly, the motion (Doc. 119) is **GRANTED-IN-PART** to the extent that the claims against Bank of America Corporation are **DISMISSED WITHOUT PREJUDICE**. The plaintiffs may amend within fourteen days. The motion is otherwise **DENIED**.

ORDERED in Tampa, Florida, on October 15, 2014.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE