## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JEFFREY A. CHRISTIE and CHERRIE CHRISTIE, individually and on behalf of all others similarly situated,

      PLAINTIFFS,

v.

BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, LP., *et al.,*

      DEFENDANTS.

_____/

Case No.: 8:13-CV-01371-JDW-TBM

**REDACTED VERSION OF THE THIRD AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED INJUNCTIVE RELIEF SOUGHT**

**COMES NOW** PLAINTIFFS JEFFREY A. CHRISTIE and CHERRIE CHRISTIE, hereinafter known as the "CHRISTIES", on their own behalf and on behalf of all others similarly situated, hereinafter known as "CLASS PLAINTIFFS" and sue Defendants BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING, LP, collectively "DEFENDANTS", and allege:

### JURISDICTION & VENUE

1.       This Court holds original jurisdiction pursuant to 28 United States Code Section 1331 due to the assertion of claims arising under the laws of the United States namely the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. Section 2601, *et seq.*

2.       Complete diversity exists between the parties, thereby establishing jurisdiction pursuant to 28 United States Code Section 1332, as no defendant resides or maintains its principal place of business in the State of Florida.

3.      Supplemental jurisdiction exists, pursuant to 28 United States Code Section 1367, over all other state law related claims alleged herein because they form part of the same case and controversy.

4.      The CHRISTIES are residents of Hernando County, Florida.

5.       DEFENDANTS are foreign business entities who maintain principal places of business in the states of Texas and North Carolina.

6.      This is a class action in which numerous members of the proposed class are citizens of a state  (Florida) that are different than the DEFENDANTS' principal places.

7.      This Court has jurisdiction because a substantial portion of the wrongdoing alleged herein took place in the State of Florida.

8.      DEFENDANTS are authorized or, have been authorized during all relevant periods, to do business within Florida and have sufficient minimum contacts with Florida  to render the exercise of jurisdiction of this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court because at least one Defendant conducts business within Pasco and Hernando counties, Florida, which lie within the jurisdiction of the Middle District of Florida.

**PARTIES**

10.      The CHRISTIES own their homestead property located 13818 Peace Boulevard Brooksville, Pasco County, Florida.

11.      BANK OF AMERICA, N.A. ("BANA"), is a Delaware for-profit banking association having its principal place of business in North Carolina, which at all times material herein, was authorized to conduct business and conducted business within the State of Florida.

12.     BANA is a lender, originator and/or servicer of mortgage loans as defined by 24 Code of Federal Regulations Section 3500.2(b) and other Federal and State of Florida statutes, regulations and codes, and is a leader in issuing and holding mortgages securing real property in the State of Florida.

13.     BAC HOME LOAN SERVICING, LP ("BACHLS"), was a Texas limited partnership having its principal place of business in Texas, which, at all material times herein, was authorized to conduct business and conducted business within the State of Florida.

14.     BACHLS was or is a servicer of mortgage loans as defined by 24 United States Code of Federal Regulations Section 3500.2(b) and other federal and State of Florida statutes, regulations and codes.

## STATEMENT OF FACTS

### BANK OF AMERICA, N.A.

15.     BANA made or held residential mortgages in the State of Florida valued at:

| Year | Reported Basis | Year | Reported Basis |
|------|----------------|------|----------------|
| 2008 | $15,787,000,000 | 2011 | $12,338,000,000 |
| 2009 | $15,088,000,000 | 2012 | $10,994,000,000 |
| 2010 | $13,616,000,000 | 2013 | Not Available |

16.     Of the total residential mortgage products in the State of Florida, BANA held nonperforming loans, loans that are in default or are close to being in default, valued at:

| Year | Value | Year | Value |
|------|-------|------|-------|
| 2008 | $1,012,000,000 | 2011 | $1,900,000,000 |
| 2009 | $1,912,000,000 | 2012 | $1,729,000,000 |
| 2010 | $2,054,000,000 | 2013 | Not Available |

17.     Annually, the value of BANA's charge-offs in Florida have been valued at:

| Year | Value | Year | Value |
|------|-------|------|-------|
| 2008 | $154,000,000 | 2011 | $595,000,000 |
| 2009 | $796,000,000 | 2012 | $ 372,000,000 |

2010                $604,000,000                2013                Not Available

18.     In January 2011, the Office of the Attorney General of the State of Florida estimated that BANA had 55,000 pending foreclosures in the State of Florida.

THE NOTE AND MORTGAGE

19.     The CHRISTIES and CLASS PLAINTIFFS are unsophisticated borrowers and consumers who entered into mortgages on real property located within the State of Florida that were owned and/or serviced by defendants BANA and/or BACHLS.

20.     On September 15, 2006, the CHRISTIES, owners of the real property located at 13818 Peace Boulevard (the "Property") in Brooksville, Pasco County, Florida, entered into a mortgage loan, as defined by federal and Florida statutes, with BANA. The CHRISTIES signed a promissory note in the principal amount of $520,780.00. The note was secured by a mortgage on the Property, given by the CHRISTIES in favor of BANA.   The Note and Mortgage documents are collectively identified as the "Mortgage Contracts."

21.     BANA, the party with vastly superior bargaining strength over the CHRISTIES and CLASS PLAINTIFFS, selected each and every term of the Mortgage Contract and presented the agreements to its customers, including the CHRISTIES and CLASS PLAINTIFFS, on a "take it or leave it" basis.  Therefore the Mortgage Contracts constitute agreements of adhesion.

22.     The CHRISTIES are informed and believe that the Note, identified as "FLORIDA ADJUSTABLE RATE NOTE – Single Family Form 3010 1/01", presented to them by BANA reflects the standard form note it issues to all of its borrowers for home loans on real property located in Florida.  A copy of the Note is attached hereto as Exhibit "A" and incorporated herein.

23.     On  information and belief the Mortgage, identified as "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" ("Mortgage"), presented to the

Christies by BANA reflects the standard form mortgage it issues to all of its borrowers for home loans on real property located in Florida.  A copy of the Mortgage is attached hereto as Exhibit "B" and incorporated herein.

24.     Fannie Mae and Freddie Mac require that all lending institutions that sell mortgages for properties located in the State of Florida use the "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT".

25.     The CHRISTIES and CLASS PLAINTIFFS had no choice but to accept the terms of the Mortgage Contract other than to forego the deal.

26.     BANA sells collateralized mortgages to Fannie Mae or Freddie Mac and makes the required representations and warranties which include certification that the mortgages sold consist of only "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" form.

27.     The CHRISTIES made their Mortgage Contract payments, on a regular and timely basis, from the inception of the loan through May 2008.

28.     The Note ensured that the CHRISTIES could expect "any notice that must be given to me … will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the note Holder a notice of my different address."  *See* Exhibit "A".

29.     The Mortgage required the CHRISTIES to pay amounts due under the Note, taxes and assessments, premiums for insurance required by the lender and other costs known under the contract as "Escrow Items."  *See* Exhibit "B" ¶ 3.

30.     The Mortgage required that the "escrow items" be held by BANA, excesses and shortages of funds were to be accounted for, and the funds could be applied as specified under RESPA, 28 United States Code Section 2609, *et seq.* *See* Exhibit "B" Section 3.

31.     In the Mortgage, BANA reserved the right for it or its agent to "make reasonable entries upon and inspections of the Property" including the interior of the improvements of the property. *See* Exhibit "B", Section 7-"Preservation, Maintenance and Protection of the Property; Inspections", p. 8 of 16.

32.     In the event that the CHRISTIES failed to maintain required insurance coverage, Section 5-"Property Insurance" of the Mortgage provided:

> Lender may obtain insurance coverage at Lender's option and Borrower's expenses. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property…. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. The amounts shall bear interest at the note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

33.     BANA could "make proof of loss if not made promptly by the borrower" and *"file, negotiate and settle any available insurance claim and related matters."* (emphasis added). Furthermore,

> any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure that work has been completed. …

*See* Exhibit "B" Section 5-"Property Insurance", p. 7 of 16.

 34. In the event repairs were not made, the Mortgage required:

> If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this

Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

*See* Exhibit "B", Section 5-"Property Insurance", p. 7 of 16.

35.    Once insurance proceeds were paid to BANA in connection with damage to, or the taking of the property, the CHRISTIES and CLASS PLAINTIFFS were, or are, "responsible for repairs only if [BANA] has released proceeds for such purposes." *See* Exhibit "B" Section 7-"Preservation, Maintenance and Protection of the Property; Inspections", p. 8 of 16.

36.    The Mortgage terms addressing "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" authorize BANA to "do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. … Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board-up doors and windows, drain water from pipes … ". *See* Exhibit "B" Section 9, p. 8 of 16.

37.     The Mortgage terms and conditions authorize the recovery of all expenses incurred in pursuing remedies including, but not limited to, reasonable attorneys' fees. *See* Exhibit "B" Section 24, p. 14.

### THE LOSS OF THE CHRISTIES' HOME

38.    In or about June 2008, the CHRISTIES notified BANA or BACHLS that CHERRIE CHRISTIE had been placed on disability and repeatedly requested BANA to negotiate a modification of the terms of the mortgage in order for them to stay current.

39.    Due to CHERRIE CHRISTIES' reduced income resulting from her disability and BANA's refusal to modify the terms of the Mortgage Contract, the CHRISTIES were no longer able to issue their regular monthly payments.

**BANK OF AMERICA, N.A. OBTAINS FORCE-PLACED INSURANCE ON THE PROPERTY**

40.     BANA contracted with Balboa Insurance Company, its subsidiary, to obtain force-placed insurance on or about November 1, 2005 effective until cancelled.   BANA subsequently sold Balboa Insurance Company but continued to obtain force-placed insurance from it, its predecessors such as Praetorian Insurance Company, and its purchaser's subsidiaries.

41.     Between 2008 and 2012, Balboa Insurance Company issued ███ force-placed insurance policies on Florida residential mortgage loans that were serviced by BANA or BACHLS.  Specifically:

| Year | No. of Policies |
|------|------|
| 2008 | ███ |
| 2009 | ███ |
| 2010 | ███ |
| 2011 | ███ |
| 2012 | ███ |
| Total | ███ |

42.     BANA and Balboa Insurance Company were and are sophisticated business entities on equal footing and were capable of negotiating the terms and conditions of the policy or policies.

43.     BANA executed the Mortgage Contract provision which authorized it to purchase a force-placed liability insurance policy on the Property.

44.     On or about December 18, 2009, BANA or BACHLS caused to be issued a force-placed liability insurance policy ("Balboa Policy") effective from September 8, 2009 to

September 8, 2010 under Master Policy No. 5702-0002, "Florida Properties Only", for the CHRISTIES' Property naming "BAC Home Loans" as the named insured.

45.     The Balboa Policy provided $482,500.00 in insurance coverage for "direct and accidental physical damage to, or loss of, insured property."

46.     BANA or BACHLS caused additional policies to be issued for the years 2009, 2010, 2011, 2012, and 2013, identified BANA or BACHLS as the named insured and charged the CHRISTIES' escrow account the following premiums:

| | | |
|---|---|---|
| a. | December 18, 2009 | $10,674.13 |
| b. | September 17, 2010 | $10,674.13 |
| c. | September 12, 2011 | $10,507.19 |
| d. | September 12, 2012 | $11,763.26 |
| e. | September 12, 2013 | $ 6,511.54 |
| | **Total Debits to Escrow** | **$50,130.25** |

The policies were issued by Balboa Insurance Co., QBE Specialty Insurance Company (a subsidiary of Balboa Insurance Co.'s purchaser), and Praetorian Insurance Co. (Balboa Insurance Co. renamed).  Copies of the 2009-2010, 2010-2011, 2011-2012, 2012-2013, and 2013-2014 force-placed insurance policies are attached hereto as Exhibits "C", "D", "E", "F", and "G" respectively and are incorporated herein.

47.     In total, BANA, BACHLS paid ██████ in premiums for force-placed insurance on Florida properties between 2008 and 2012 as noted below:

| Year | Unearned Premium Amounts |
|---|---|
| 2008 | ████████ |
| 2009 | |
| 2010 | |
| 2011 | |
| 2012 | |

|  | Year | Unearned Premium Amounts |
|---|---|---|
|  | Total | ████████ |

These premiums would have been charged to the borrowers' escrow accounts.

48.     Master Policy No. 5702-0002, "Florida Properties Only", imposes the following duties on the insured:

> YOUR duties after LOSS.  When a LOSS has occurred to which the Residential Property Form may apply, YOU … shall see that the following duties are performed:
>
> a.  give US or OUR agent immediate notice of the LOSS;
>
> b.  protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of the cost of such repairs; …

2009-2010 Balboa Policy, Exhibit "D" p. 4.  The 2010-2011, 2011-2012, 2012-2013, 2013-2014 force-placed insurance policies' duty provisions are identical in all material terms.  *See* Exhibit "D" p. 4, "E" p. 4, "F" p. 4, "G" p. 4.

49.     The force-placed insurance policies contained coverage for "Other Structures", "Debris Removal", and "Emergency Repairs".  *See, e.g.,* Exhibit. "C" p. 2.

**BANK OF AMERICA, N.A. HAD NOTICE OF THE CONDITION OF THE PROPERTY**

~~50.~~     Beginning in October 2008, BANA or BAC conducted inspections of the Property on a monthly basis.  On information and belief, BANA or BAC conducted similar inspections of all properties financed by BANA with non-performing mortgages.

51.     On or about December 26, 2009, Robert Allen Bean was arrested, prosecuted and adjudged guilty of felony armed burglary of the Property in Pasco County Superior Court Criminal Action No. 512009CF007539A000WS which is available for all to view including BANA or BACHLS.  The burglary resulted in the unlawful taking of construction materials, wiring and fixtures from the Property.

52.     Upon information and belief, BANA or BACHLS was on actual or constructive notice, or should have reasonably known, of the condition of the Property.

53.     After the CHRISTIES received notice from BANA that their loan could be qualified for a modification, the CHRISTIES returned to the Property and discovered substantial damage to the property rendering it uninhabitable.  The Property suffered damage to the home and other buildings including the drywall, ceilings, light fixtures, missing appliances, insulation, painting, removed electrical wiring and copper piping throughout the house, roof damage, missing outlets, missing sinks and bathroom fixtures, missing fans, missing electrical panels, mold, as well as missing fencing and gates.

## BANK OF AMERICA, N.A. MADE CLAIMS UNDER THE FORCE-PLACED INSURANCE WITHOUT NOTIFYING THE CHRISTIES OR CLASS PLAINTIFFS

54.     On or about September 4, 2012, the CHRISTIES notified BANA or BACHLS of the damages to the property.

55.     When the CHRISTIES inquired as to whether the force-placed insurance could be used pay for repairs, a BANA Customer Service Representative accused the CHRISTIES of making claims under one or more of the policies and collecting insurance proceeds.  The representative then denied that BANA had made claims under the force-placed insurance policies.

56.     In reality, BANA, BACHLS had submitted numerous claims and received cash proceeds payments from the force-placed insurance policies as follows:

a.      December 22, 2010    Claim No. 11033918        $  3,018.34

b.      December 22, 2010    Claim No. 11035044        $19,749.70

c.      March 4, 2012        Claim No. L12054847       $  4,584.67

    d.      September 4, 2012     Claim No. 12051850      $ 7,374.48

**Total known cash payments received: $34,727.19**

57.    On information and belief, the cash proceeds payments were held in accounts separate from the CHRISTIES' and other borrowers' escrow accounts by which BANA or BACHLS generated income.

58.    No repairs were conducted on the Property.  Had repairs been conducted, BANA or BACHLS would have been reimbursed for the repairs up to the following amounts:

    a.  December 22, 2010  Claim No. 11033918     $ 3,975.82

    b.  December 22, 2010  Claim No. 11035044     $27,819.25

    c.  March 4, 2012      Claim No. L12054847     $ 7,965.14

    d.  September 4, 2012  Claim No. 12051850     $ 9,159.47

**Total proceeds reimbursable for repairs: $48,919.68**

59.    Between 2008 and 2013, force-placed insurers closed 18,716 of the force-placed insurance claims BANA and BACHLS placed on Florida properties.  The claims resulted in 10,680 claims proceeds payments from insurance claims reserves.  Additional claims remain open after September 3, 2013 or may have been reopened.

| Year | No. of BoA Claims | No. of Claims Paid | End of Year Claim Reserves[1] |
|------|-------------------|--------------------|-------------------------------|
| 2008 | | | |
| 2009 | | | |
| 2010 | | | |
| 2011 | | | |
| 2012 | | | |
| 2013 | | | |
| **Totals** | | | |

---

[1] The End of Year Claims Reserves column addresses all reserves held by Balboa Insurance Co. not just those allocated to properties serviced by Bank of America, N.A.  However, Bank of America, N.A. was Balboa Insurance Co.'s largest client until Bank of America, N.A. sold 50% of its mortgage portfolio in early 2013.

60.     BANA and BACHLS maintained and maintain policies and practices such that they did not provide notice to the borrowers that they made claims, negotiated the claims, received claims proceeds and held the proceeds from claims on Florida properties.

61.     Despite sending mortgage-related correspondence to the CHRISTIES new address, neither BANA nor BACHLS notified the CHRISTIES that it made a claim or claims against the force-placed insurance policies until October 26, 2012, after they discovered that BANA had made prior claims.  On information and belief, neither BANA nor BACHLS notified other CLASS PLAINTIFFS when claims were made on their properties.

62.     The CHRISTIES contacted BANA's Property Claims Department which denied making claims for damages to the Property against the force-placed policies and denied receiving proceeds when it had, in fact, submitted claims and received proceeds payments.  On information and belief, BANA and BACHLS submitted claims and received proceeds for other CLASS PLAINTIFFS' properties.

63.     The CHRISTIES prepared written correspondence inquiring as to whether claims proceeds had been credited in favor of their mortgage balance or, alternatively, if repairs had been made to the Property.  True and correct copies of the letters are attached hereto as Exhibits "H" and "I".

64.     As of November 13, 2012, neither BANA nor BACHLS had credited any of the funds recovered under the forced-placed insurance claims in favor of the CHRISTIES' mortgage or escrow balances.

65.     On or about December 7, 2012, the CHRISTIES again contacted BANA in an attempt to obtain a loan modification or refinance; the company advised them that they could not obtain a loan modification or refinance their residence because of a pending property claim.

66.     The CHRISTIES are informed and believe that BANA and BACHLS, as a custom and practice, submitted insurance claims on properties insured by force-placed insurance without:

      a.     Notifying the borrowers regarding force-placed insurance claims and proceeds;

      b.     Negotiating the best settlement with the force-placed insurer;

      c.     Assessing whether repairs were economically feasible or would lessen the Lender's security;

      d.     Determining whether the  interest or the interests of the borrower would be better protected by conducting repairs instead of accepting the cash value of the insurance claims;

      e.     Releasing force-placed insurance proceeds held for borrowers' properties in order for borrowers to make repairs or restore; and

      f.     Doing and paying for whatever was economically reasonable and appropriate to protect their interest in the properties and rights under the Mortgages.

### THE FORECLOSURE PROCEEDINGS

67.     On or about April 30, 2009, BANA filed a two count Complaint for Foreclosure of Mortgage and Reestablishment of Promissory Note, Civil Action 51-2009-CA-004188-CAAX-WS ("Foreclosure Action") against the CHRISTIES in Pasco County, Florida.

68.     In support of the foreclosure, BANA filed an Affidavit Supporting Plaintiff's Motion for Summary Final Judgment summarizing the debt due under the Mortgage Contract. Under the penalties of perjury, BANA representatives confirmed that the CHRISTIES owed $31,855.45 in insurance premiums; however, the affidavit did not indicate that BANA held

$23,649.70 in insurance proceeds and did not apply the proceeds to the Christies' account.  A true and correct copy of the Affidavit is attached hereto as Exhibit "J."

69.     The Court entered a Uniform Final Judgment of Foreclosure on February 10, 2012; BANA requested and received an order cancelling the scheduled foreclosure sale and vacating the Uniform Final Judgment of Foreclosure on March 6, 2012.

70.     BANA's intentional cancellation and dismissal of the Foreclosure proceeding provided BANA the opportunity to continue to file additional claims against the force-placed insurance on the CHRISTIES' property and continue to earn interest on the insurance proceeds it held for the property and on the underlying debt which should have been eliminated upon receipt of the insurance proceeds.

71.     If BANA had continued with its Foreclosure action in good faith, the force-placed insurance policy would no longer provide coverage and BANA would not be the recipient of later filed claims proceeds for damages to the CHRISTIES and, likewise, CLASS PLAINTIFFS' properties.

### DAMAGES TO THE CHRISTIES AND THE CLASS PLAINTIFFS

72.     BANA's and BACHLS' policies practices and procedures regarding the retention of force-placed insurance proceeds have caused injuries to the CHRISTIES and the CLASS PLAINTIFFS.

73.     As a consequence of the improper policies, practices and procedures, the CHRISTIES and the CLASS PLAINTIFFS did not receive the value of the insurance premiums for which they paid, did not receive a credit towards their mortgages for the total insurance proceeds received and have been forced to incur interest on the outstanding mortgages which

should have been reduced through the application of force-placed insurance proceeds and interest on the force-placed insurance for which they received no benefit.

74.     As a further consequence of the improper policies, practices and procedures, BANA and BACHLS retained the force-placed insurance proceeds for their own use and benefit by not crediting the funds towards the Mortgages, earned interest on the force-placed insurance proceeds they held, earned income on the full balance of the Mortgage debt, including the force placed insurance premiums, since the proceeds had not been applied to reduce the balance and have enjoyed tax benefits by receiving mortgage reimbursements through non-taxable insurance proceeds.

## CLASS REPRESENTATION ALLEGATIONS

75.     The CHRISTIES bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23 and this action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

76.     This action consists of the following Plaintiff Classes who are residents of the United States:

a.     All BANA home loan borrowers who executed a "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" securing property located in the State of Florida for whom BANA or BACHLS received force-placed insurance proceeds but did not credit the proceeds to the debt (the "Missing Proceeds Class"); and

b.     All BANA home loan borrowers who executed a "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" securing property

located in the State of Florida for whom BANA or BACHLS has asserted pending force-placed insurance claims. (the "Pending Claims Class").

77.     The CHRISTIES reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

78.     Excluded from the Classes are BANA and BACHLS their parents, subsidiaries, affiliates, officers and directors, any entity in which either has a controlling interest, all borrowers who executed a "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" and make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

79.     The members of the Classes are so numerous that joinder is impractical.   If BANA acted as described herein with respect to one percent of the 55,000 pending foreclosures in 2011, 550 class members would be affected by the wrongdoing.   Considering BANA and BACHLS have been following these practices and procedures over multiple years, the CLASS PLAINTIFFS consist of hundreds if not thousands of members, whose identities are within the knowledge of and can be ascertained only by resort to BANA's records.

80.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like Class members, incurred interest charges by BANA as a result of its practice of not applying force-placed insurance proceeds to their underlying debt; were charged for force-placed insurance premiums for which they received no benefit; and were burdened with unfair and unconscionable interest debt.   Furthermore, the factual basis of BANA's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

81.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

82.     Among the questions of law and fact common to the Classes are whether BANA and/or BACHLS:

a.      Failed and fails to provide their borrowers with accountings of the excesses and deficiencies in their escrow accounts including the force-placed insurance proceeds;

b.      Failed and fails to conduct an assessment to determine whether repairs are economically feasible and in the best interest of the Lender;

c.      Failed and fails to properly credit force-placed insurance proceeds to the borrowers' underlying debts;

d.      Failed and fails to do or pay for what was reasonable or appropriate to protect their interest in the Property and rights after receiving force-placed insurance proceeds;

e.      Maintained and maintain policies, practices and procedures of causing force-placed insurance to be placed on its borrowers' properties;

f.      Maintained and maintain policies, practices and procedures of regularly inspecting properties and electing to make claims under the force-placed insurance for observed damage;

g.      Maintained and maintain policies, practices and procedures of not utilizing all forms of coverage available under the force-placed insurance policies to complete emergency repairs and debris removal necessary to secure and protect the property;

h.      Maintained and maintain policies, practices and procedures of not providing immediate notice to the insurers and not making reasonable and necessary repairs to protect the property both of which are duties under the force-placed insurance policies;

i.      Maintained and maintain policies, practices and procedures of not providing notice to the borrowers that claims were being made under the force-placed insurance for damage to their property;

j.      Maintained and maintain policies, practices and procedures of not fully negotiating with the insurers to obtain the maximum amount of insurance available for the claimed loss;

k.      Obtained and obtains force-placed insurance proceeds without notifying the borrowers;

l.      Failed and fails to determine whether repair reimbursements versus cash reimbursements are in the security's best interest;

m.      Recovered and recovers income on the force-placed insurance proceeds kept in separate investment accounts and not credited to the borrowers debt;

n.      Breached a covenant of good faith and fair dealing arising out of the terms of the Contract;

o.      Imposes policies, practices and procedures on its borrowers that are deceptive and unfair regarding force-placed insurance proceeds and the provisions of the Mortgage;

p.      Concealed and conceals the possession of force-placed insurance proceeds from borrowers and the courts during foreclosure proceedings;

q.      Requires its customers to enter into standardized account agreements which include provisions that are unconscionably applied; and

r.      Continues to commit wrongdoing through its policies and practices regarding force-placed insurance proceeds.

83.     Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages for the Missing Proceeds Class, and

b.      The proper injunctive relief to which the Missing Proceeds and the Pending Claims Classes are entitled.

84.     The CHRISTIES' claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices regarding force-placed insurance proceeds and the same or substantially similar unconscionable application of provisions of the Mortgage by Bank of America.  The CHRISTIES have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

85.     The CHRISTIES are committed to the vigorous prosecution of class actions and have retained competent counsel with experience in the prosecution of complex litigation. Accordingly, the CHRISTIES are adequate representatives and will fairly and adequately protect the interests of the Classes.

86.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BANA, no Class member could afford to seek legal redress individually for the claims alleged herein.

Therefore, absent a class action, the Class members will continue to suffer losses and BANA's misconduct will proceed without remedy.

87.     Even if Class members themselves could afford individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contract, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard in light of the relative expense, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COUNT 1: Breach of Contract

Brought by the CHRISTIES individually and on behalf of CLASS PLAINTIFFS
Against defendants BANA and BAC

88.     The CHRISTIES and CLASS PLAINTIFFS incorporate Paragraphs 1 through 74 as if fully set forth herein.

89.     All condition precedents have been performed, have occurred or, alternatively, have been excused or waived.

90.     BANA and/or BACHLS have failed to perform pursuant to the terms of the Mortgage in that it has failed and refused, and still refuses, to:

a.     Provide notice to the CHRISTIES and CLASS PLAINTIFFS that they made claims under the force-placed insurance proceeds;

b.     Account for excesses and shortages of funds held in escrow;

c.     Notify the borrowers of actions related to force-placed insurance claims and proceeds;

d.      Negotiate the best settlement of claims under the force-placed insurance policies;

e.      Assess whether restoration or repair of the properties secured by the Mortgages is economically feasible or whether the security would be lessened;

f.      Determine whether the their interests or the interests of the borrowers would be better protected by conducting repairs instead of accepting the cash value of the insurance claims;

g.      Apply force-placed insurance proceeds to the CHRISTIES' and CLASS PLAINTIFFS' underlying mortgage debt within a reasonable amount of time;

h.      Release force-placed insurance proceeds held for borrowers properties in order for borrowers to repair or restore their properties; and

i.      Do and pay for whatever was economically reasonable and appropriate to protect their interest and the borrowers' interests in the properties and rights under the Mortgages.

91.     By reason of these breaches, the CHRISTIES and CLASS PLAINTIFFS have been damaged in the sum of the total force-placed insurance proceeds obtained by BANA and BACHLS but not applied to the underlying debt, the total sum of interest accrued against their Mortgage Contracts when the underlying debt should have been reduced by a credit of the force-placed insurance proceeds; the total sun of the interest, secured on force placed insurance premiums for which the borrowers received as benefit.

92.     As a result of the above mentioned allegations, it has become necessary for the CHRISTIES to employ attorneys, and have employed attorneys, with an agreement that they

would pay the attorneys a reasonable fee to be fixed by this Court for their services in prosecuting this litigation.

**COUNT 2: Breach of the Implied Duty of Good Faith & Fair Dealing**

Brought by the CHRISTIES individually and on behalf of the CLASS PLAINTIFFS
Against defendants BANA and BACHLS and

93.     The CHRISTIES and CLASS PLAINTIFFS incorporate Paragraphs 1 through 74 as if fully set forth herein.

94.     Based on the relationships between the CHRISTIES and the CLASS PLAINTIFFS, BANA and BACHLS owed the CHRISTIES and the CLASS PLAINTIFFS a duty of good faith and fair dealing in the performance and enforcement of the "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" mortgage.

95.     As set more fully above, BANA and BACHLS breached the implied covenant of good faith and fair dealing owed to the CHRISTIES and the CLASS PLAINTIFFS by failing to:

a.     Account for excesses and shortages of funds held in the CHRISTIES' and CLASS PLAINTIFFS' escrow accounts including force-placed insurance proceeds;

b.     Notify the CHRISTIES and CLASS PLAINTIFFS that they intended to file, negotiate and settle available insurance claims and related matters;

c.     File, negotiate and settle any available insurance claims and related matters in good faith to obtain the maximum amount recoverable under the policy;

d.     Notify the CHRISTIES and CLASS PLAINTIFFS that they received force-placed insurance proceeds;

e.     Assess whether the restoration or repair of the CHRISTIES' and the CLASS PLAINTIFFS' properties were economically feasible and the Lender's security was not lessened;

f.     Apply insurance proceeds to the restoration and repair of the CHRISTIES' and the CLASS PLAINTIFFS' properties where economically feasible and the Lender's security was not lessened;

g.     Apply insurance proceeds to the sums secured by the Mortgage, whether or not then due, with the excess, if any, paid to the CHRISTIES and CLASS PLAINTIFFS;

h.     Release the CHRISTIES and CLASS PLAINTIFFS from the obligation to conduct repairs to their properties and depreciation caused by the lack of repairs where BANA and/or BACHLS held force-placed insurance proceeds; and

i.     Do and pay for whatever is reasonable or appropriate to protect BANA's, BACHLS', the CHRISTIES' and CLASS PLAINTIFFS' interest in the properties on which force-placed insurance claims were made.

96.     Further, based on the policies of BANA, it decided to foreclose on the Mortgage and further breached its duty of good faith and fair dealing with the CHRISTIES by failing to notify the foreclosing court of the force-placed insurance proceeds in its possession, custody and control such that the proceeds were not accounted for in BANA's judgment of foreclosure against the CHRISTIES.  Under information and belief, BANA applies the same practices and procedures to not identify the force-placed insurance proceeds held for all foreclosures.

97.     The acts of BANA and BACHLS as alleged herein were committed willfully and recklessly by BANA and BACHLS and were committed with the express design and intention to obtain an unjust benefit and to the detriment and damage of the CHRISTIES and the CLASS PLAINTIFFS, and all with the intent of gaining the force-placed insurance proceeds, interest on the proceeds, tax benefits, and interest on the underlying debt that should have been eliminated

upon receipt of the force-placed insurance proceeds, and all in a fashion sufficient to justify and award of punitive damages.

98.     Based on the foregoing, and on the acts of BANA and BACHLS as alleged herein, the CHRISTIES and the CLASS PLAINTIFFS have been damaged within the jurisdictional limits of this Court.

### COUNT 3: Breach of Fiduciary Duty

Brought by the CHRISTIES individually and on behalf of the CLASS PLAINTIFFS
Against defendants BANA and BACHLS

99.     The CHRISTIES and CLASS PLAINTIFFS incorporate Paragraphs 1 through 74 as if fully set forth herein.

100.     BANA, as a lender, originator and/or servicer of mortgage loans, is in the business of providing credit to borrowers and servicing loans.

101.     BACHLS was a servicer of mortgage loans.

102.     Pursuant to the "FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT" provisions related to "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument", defendants BANA and BACHLS were authorized, but not required, to take the following actions with respect to the Property and properties financed by the CLASS PLAINTIFFS:

a.     Obtain force-placed insurance on the Property and on properties financed by the CLASS PLAINTIFFS and at their expense;

b.     File, negotiate and settle any available insurance claims and related matters;

c.     Make proofs of loss under the policies;

d.      Assess whether the restoration or repair of the properties was economically feasible and whether BANA's security would not be lessened;

e.      Apply insurance proceeds to either the restoration or repair of the property or to the underlying debt; and

f.      Do and pay for whatever was reasonable or appropriate to protect BANA's interest in the properties and rights under the Mortgage.

103.    BANA and BACHLS voluntarily elected to and placed force-placed insurance on the properties and filed, negotiated and settled insurance claims for losses to the properties.

104.    By electing to proceed under the Mortgage's "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument", BANA and BACHLS established a relationship of trust and confidence with the CHRISTIES and CLASS PLAINTIFFS in that BANA and BACHLS would manage the benefits and comply with the duties and obligations of the force-placed insurance in the same manner as a prudent person would and that the powers granted under the Mortgage would be exercised to protect BANA's  interest in the properties as security thereby protecting the corresponding interests of the CHRISTIES and the CLASS PLAINTIFFS.

105.    By electing to proceed under the Mortgage's "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument", BANA and BACHLS undertook additional services thereby exceeding the role of a traditional lender/borrower relationship such that defendants owed the CHRISTIES and CLASS PLAINTIFFS the duty to manage the insurance benefits and comply with the duties and obligations of the force-placed insurance

policies in the same manner as a prudent person would and to exercise the provisions of the Mortgage to protect BANA's interest in the properties as security thereby protecting the corresponding interests of the CHRISTIES and the CLASS PLAINTIFFS.

106. By electing to proceed under the Mortgage's "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument", BANA and BACHLS received a greater economic benefit than they would through a typical lender/borrower transaction by relieving BANA of financial losses resulting from damage to the properties and additional interest and other income such that defendants owed the CHRISTIES and CLASS PLAINTIFFS the duty to manage the insurance benefits and comply with the duties and obligations of the force-placed insurance policies in the same manner as a prudent person would and to exercise the provisions of the Mortgage to protect BANA's interest in the properties as security thereby protecting the corresponding interests of the CHRISTIES and the CLASS PLAINTIFFS.

107. Beginning on about December 18, 2009, defendants BANA and BACHLS caused force-placed insurance to be issued on the Property as was its custom and practice with respect to other uninsured properties owned by CLASS PLAINTIFFS.

108. On or about December 22, 2010 and continuing thereafter, defendants BANA and BACHLS elected to file, negotiate and settle any available insurance claims and related matters under the force-placed insurance, failed to comply with the duties under the force-placed insurance policies, then held the resulting proceeds without notification to the CHRISTIES as was the defendants' custom and practice they applied to all properties deemed owned by CLASS PLAINTIFFS.

109.    The Mortgages obligated BANA and BACHLS to secure and repair the property and apply force-placed insurance proceeds to the repair and restoration of the policy or to the underlying debt; defendants, after exercising rights arising from the "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provision to obtain insurance proceeds, defendants refused and continue to refuse to repair and/or secure the property in compliance with the duties owed under the Mortgage and the force-placed insurance policies; determine whether repairs are economically feasible or whether BANA's security would be lessened; and apply force-placed insurance proceeds towards the repair and restoration borrower's properties or credit the underlying debt.

110.    As a direct and proximate result of BANA's and BACHLS' breach of their fiduciary duties, the CHRISTIES and CLASS PLAINTIFFS have not received credit towards the debts owed under the Mortgages for the force-placed insurance proceeds obtained by BANA and BACHLS; have incurred additional interest generated on the underlying debt as a result of BANA's and BACHLS' failure to apply the force-placed insurance proceeds on the underlying debt; and have suffered depreciation with respect to the properties which impacts the ability to recover value from the properties from a foreclosure sale.

111.    On information and belief, BANA and BACHLS have generated additional interest income by holding force-placed insurance proceeds that should have been applied to the CHRISTIES' and the CLASS PLAINTIFFS' underlying debt and have enjoyed tax benefits as a result of receiving non-taxable insurance proceeds.

112.    The practices and procedures implemented by BANA and BACHLS with respect to the "Property Insurance", "Preservation, Maintenance and Protection of the Property;

Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" does not satisfy the defendants' duties to manage the benefits and comply with the duties and obligations of the force-placed insurance in the same manner as a prudent person in that defendants have not and are not considering the purposes, terms, requirements and other circumstances of the Mortgage and the force-placed insurance policies and have not and are not exercising reasonable care and skill.

113.    BANA's and BACHLS' practice and procedures with respect to the implementation of the "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provisions and the force-placed insurance as set forth herein constitutes a breach of trust.

114.    As a result of BANA's and BACHLS' practices and procedures with respect to the implementation of the "Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provisions and the force-placed insurance, the CHRISTIES and CLASS PLAINTIFFS have suffered damages.

115.    Separately, based on the foregoing and on the acts of BANA and BACHLS, as alleged herein, the CHRISTIES have been individually damaged in that defendants failed to conduct repairs to or secure the Property and failed to negotiate the maximum available insurance proceeds available for losses to the Property to be applied towards the repairs or the debt.   As a direct and proximate result, the Property has depreciated in value and requires restoration and repair in excess of $200,000 to bring it back to its former condition.

**COUNT 4:  Unjust Enrichment**

Brought by the CHRISTIES individually and on behalf of the CLASS PLAINTIFFS
Against defendants BANA and BACHLS

116.    The CHRISTIES, individually and on behalf of the CLASS PLAINTIFFS, incorporate Paragraphs 1 through 18 and 38 through 74 as if fully set forth herein.

117.    Alternatively, the CHRISTIES, individually and on behalf of the CLASS PLAINTIFFS allege that defendants BANA and BACHLS have been unjustly enriched through their practices and procedures with respect to their application of the Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provisions and the force-placed insurance.

118.    After entering into the Mortgages with the CHRISTIES and CLASS PLAINTIFFS, the defendants have manipulated their practices and procedures with respect to their application of the Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" such that they have incurred the benefits of earning interest on the force-placed insurance proceeds as separate investments distinct from the Mortgage, through tax benefits of obtaining non-taxable insurance proceeds and either double recovery of the underlying debt that should have been eliminated by the insurance proceeds or possible beneficial tax advantages as a result of a greater write-off none of which were contemplated by or addressed in the terms of the Mortgage.

119.    Defendants BANA and BACHLS were aware of the benefits set forth herein and accepted those benefits without providing any consideration or, in the event consideration was

provided, adequate consideration to the CHRISTIES and CLASS PLAINTIFFS in exchange for the benefits.

120.    BANA's and BACHLS' receipt of those benefits and privileges constitutes unjust enrichment and has damaged the CHRISTIES and the CLASS PLAINTIFFS.

121.    Accordingly, the CHRISTIES, individually and on behalf of the CLASS PLAINTIFFS seek full disgorgement and restitution of the defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

### COUNT 5: Violation of FDUTPA

Brought by the CHRISTIES individually and on behalf of the CLASS PLAINTIFFS
Against defendants BANA and BACHLS

122.    The CHRISTIES and CLASS PLAINTIFFS incorporate Paragraphs 1 through 74 as if fully set forth herein.

123.    The CHRISTIES, individually and on behalf of the CLASS PLAINTIFFS, bring this action for damages for BANA's and BACHLS' violations of the Florida Deceptive and Unfair Trade Practices Act (Florida Statutes Section 501.201*, et. seq.*).

124.    BANA's execution of the Mortgage, lending pursuant to the Mortgage and BANA's and BACHLS' loan servicing pursuant to the Mortgage in this cause as more fully set forth herein were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Sections 501.201 to 501.213.

125.    The CHRISTIES have never been engaged in the business of residential lending.

126.    In engaging the conduct identified herein, BANA and BACHLS committed unfair and deceptive trade practices in connection with their application of the Property Insurance", "Preservation, Maintenance and Protection of the Property; Inspections" and "Protection of Lender's Interest in the Property and Rights Under this Security Instrument".

127.    As a result of defendant's unlawful conduct, the CHRISTIES and the CLASS PLAINTIFFS have  suffered ascertainable losses including:

      a.     Uncredited force-placed insurance proceeds;

      b.     Interest accrued on the underlying debt which would have been eliminated had the force-placed insurance proceeds been credited to the sums secured by the mortgage;

      c.     Force-placed insurance premium payments as debt for which no benefit was received;

      d.     Interest accrued on force-placed insurance premium payments for which no benefit was received;

      e.     Injunctive relief; and

      f.     Reasonable attorney's fees and costs of suit pursuant to § 501.211(2) of the Florida Statutes.

## INDIVIDUAL CAUSES OF ACTION

### COUNT 6: Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*
Brought by the CHRISTIES, individually,
Against defendants BANA and BACHLS

128.    The CHRISTIES incorporate Paragraphs 1 through 74 as if fully set forth herein.

129.    Upon information and belief, defendants BANA and BACHLS as a custom and practice fail to comply with RESPA, 12 U.S.C. § 2601, thus establishing a pattern and practice as defined by Section 2605(f)(1).

130.    Within one year of the date of the filing of this action, the CHRISTIES made multiple attempts to communicate verbally and in writing with BANA and/or BACHLS and demanded an explanation as to:

a.      Whether or not BANA had made claims under the force-placed insurance;

b.      Whether or not force placed insurance proceeds had been recovered and were held by the defendants;

c.      Whether they could arrange repairs to the Property using the force-placed insurance proceeds held by BANA; and

d.      The possibility and/or status of the modification of their Mortgage Contract.

131.    The written communications were "qualified written requests" as defined by 12 U.S.C. § 2605.

132.    BANA and/or BACHLS did not timely or adequately respond to the CHRISTIES' qualified written requests as required by 12 U.S.C. § 2605(2).

133.    As a result, the CHRISTIES have been and continue to be damaged in that:

a.      Force-placed insurance proceeds have not been applied to the repair and restoration of the Property where economically feasible and in the best interest of the lender or applied to the CHRISTIES escrow account;

b.      Interest has accrued on the underlying debt against which force-placed insurance proceeds should have been credited;

c.      Force-placed insurance proceeds for which they receive no benefit have been and continue to be applied to their escrow account;

d.      Defendants refuse to negotiate in good faith as to a modification of their Mortgage Contract;

e.      They have incurred out-of-pocket expenses including time, postage, copies and other expenses according to proof; and

a.      Reasonable attorney's fees and costs of suit pursuant to 28 U.S.C. § 2605(f).

## PRAYER FOR RELIEF

WHEREFORE, the CHRISTIES, on behalf of themselves and all other similarly situated, pray for judgment against the DEFENDANTS as follows:

A.      An order certifying this case as a class action and appointing the CHRISTIES and their counsel to represent the identified classes;

B.      An order requiring BANA and BACHLS to notify the CHRISTIES and CLASS PLAINTIFFS when the entities file claims, negotiate, and settle claim  under a force-placed insurance policy issued on a property located within the State of Florida as required by the Mortgage;

C.      An order requiring BANA and BACHLS to notify the CHRISTIES and CLASS PLAINTIFFS when the entities receive force-placed insurance proceeds for claims made;

D.      An order requiring BANA and BACHLS to negotiate the best settlement of claims under the force-placed insurance policies pursuant to its fiduciary duties;

E.      An order requiring BANA to assess whether restoration or repair of the properties secured by the Mortgages is economically feasible or whether the security would be lessened;

F.      An order requiring BANA and to determine whether the interests of BANA and the borrowers would be better protected by conducting repairs instead of accepting the cash value of the insurance claim;

G.       An order requiring BANA and BACHLS to apply force-placed insurance proceeds that they possess with respect to homes that have gone through foreclosure towards the underlying debt or to reimburse such funds to the borrowers if the underlying debt has been satisfied;

H.       An order declaring that DEFENDANTS' alleged acts and practices constitute a breach of the mortgage contract as to the CHRISTIES and the other CLASS PLAINTIFFS;

I.       An injunction permanently enjoining DEFENDANTS from continuing to engage in the deceptive and abuses practices relating to force-placed insurance described herein;

J.       An order for DEFENDANTS' specific performance of their contractual obligations together with other relief required by contract law;

K.       Restitution to the CHRISTIES and other CLASS PLAINTIFFS;

L.       Actual damages for injuries suffered by the CHRISTIES and the other CLASS PLAINTIFFS;

M.       Disgorgement of the interest BANA and BACHLS earned on wrongfully held force-placed insurance proceeds;

N.       Statutory damages as authorized by Federal, State and common law;

O.       Reasonable attorney's fees and costs of this action;

P.       Prejudgment interest as authorized by law; and

Q.       Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

JEFFREY A. CHRISTIE and CHERRIE CHRISTIE hereby demand trial by jury on all issues so triable to the extent authorized by law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that today, **October 29, 2014**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document and the notice of electronic filing have been furnished by first-class mail to the following non-CM/ECF participants:  NONE.

*SHIELD LAW GROUP, P.A.*

_____*/s/ John W. Adams*_____
JERRY JARAMILLO, ESQUIRE
FBN: 85502
jjaramillo@shieldlawpa.com
JOHN W. ADAMS, JR., ESQUIRE
FBN: 50127
jadams@shieldlawpa.com
2100 W. Dr. Martin Luther King Jr. Blvd.
Tampa, Florida 33607
Telephone: (813) 871-3074
Facsimile: (813) 871-5210

ARNOLD D. LEVINE, ESQUIRE
Florida Bar Number 0046869
alevine@arnoldlevineassoc.com
PAUL D. SULLIVAN, ESQUIRE
Florida Bar Number 780448
psullivan@arnoldlevineassoc.com
505 E. Jackson Street, Suite 200
Tampa, Florida 33602
Telephone:  (813) 229-6585
Facsimile:  (813) 229-7210
*Attorneys for Plaintiffs*